WILLIAM M. PERRINE, TRUSTEE, RESPONDENT, v. JOHN
WARNER, APPELLANT.

Argued November 30, 1914—Decided March 1, 1915.

By an act passed November 29th, 1788, entitled "An act to enable
the owners of tide swamps and marshes to improve the same,
and the owners of meadows already banked in and held by differ-
ent persons to keep the same in good repair" (*Comp. Stat., p.*
3241), the owners of tide swamps and marshes were authorized
to improve the same, and a corporation was authorized to be
formed from those who claimed to be the owners of such lands
in a given locality to take charge of such work and assess the
cost upon the owners. By a supplement to this act passed No-
vember 27th, 1806 (*Comp. Stat., p.* 3249), the manager of such
corporation was empowered, in case the owners of the reclaimed
lands neglected or refused to pay the assessments in a given time,
to offer for lease, at public vendue, so much of such reclaimed
land as would be sufficient to pay the assessment, and to make a
lease to the purchaser, the effect of which should be to vest in
him the possession of the lands and the right to exclude the own-
ers and all others during the term thereof. *Held*, that a person
who obtains a lease under the circumstances recited in the statute
and its supplement is entitled, during the continuance of the
lease, to the sole possession of the leased lands, and to exclude
therefrom both the state itself and anyone claiming in the right
of the state.

On appeal from the Supreme Court.

For the appellant, *J. Warren Davis* and *Austin H. Swack-
hamer*.

For the respondent, *Lewis Starr*.

For the State of New Jersey, *Herbert Boggs*, assistant
attorney-general.

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE. This was an action of trespass
brought to determine the question whether the plaintiff is

entitled to exclude the public, or individual members thereof, from certain salt meadow, or marshland, in Salem county, washed by the waters of Salem creek and the Delaware river. Plaintiff had a verdict and judgment thereon.

Some seventy-five years ago this meadow land was reclaimed from flooding by the tides under the act of November 29th, 1788 (*Pat. L., p.* 84), entitled "An act to enable the owners of the tide swamps and marshes to improve the same, and the owners of meadows already banked in and held by different persons to keep the same in good repair." The work of reclamation was done by the building of dikes, or embankments, along the edge of the creek and the river; and thereafter the land was cultivated and farmed by the owners from year to year until 1877, when the embankments were broken down at various places, and the land again flooded by the tide. These breaches were repaired, and the location of some parts of the embankment changed; but in the following year they were washed out again by a severe storm, and since then no attempt to rebuild them has been made, and the lands have been subjected to the recurring flow and ebb of the tides.

The principal question argued before us was whether, after the abandonment of these lands to the forces of nature for over a third of a century, they are now a part of the riparian lands of the state, open to public user by the people thereof, or whether the title thereto still remains in its reclaimers, and those holding under them; the contention on the part of the state and of the defendant being that these lands, before reclamation, were a part of the state's property, and that the right of reclamation granted by the state was a mere license, which terminated upon the abandonment of the land by the licensees to the flow of the tide; and the contention on the part of the plaintiff being that the act of 1788 is a legislative recognition of the fact that this land, and all other land of like character, was never the property of the state, but had always been held in private ownership.

We do not find it necessary for the disposition of this case

to decide this question; and, in view of the momentous importance of such a decision, affecting, as it must, vast amounts of property in all of our counties which are washed by the Atlantic ocean or Delaware bay, the value of which can hardly be estimated, we feel that we ought not to do so in a case where the property involved is of such comparatively small pecuniary worth.

: And we find it unnecessary to determine that question for this reason: By the scheme of the act of 1788 a corporation was authorized to be formed from among those who claimed to be the owners of such lands in a given locality, which was empowered to take charge of the work of erecting and maintaining the necessary embankments, dams, sluices and other works necessary for the shutting out of the tide, and to assess the cost thereof upon the owners of all such lands in accordance with the area of their holdings, and to make similar assessments to pay for the cost of maintaining and repairing the banks, and other works, in case they were injured or destroyed by the tides. It was also authorized to appoint a manager to take charge of and superintend the work of reclamation and of maintenance. By a supplement to that act passed November 27th, 1806 (Pen. L., p. 529, § 4), the manager so appointed was authorized, in case the owners of the reclaimed land should neglect or refuse to pay their assessments for repairs within twenty days after presentation of his, or their, accounts for the same, * * * to offer for lease, at public vendue, so much of the meadow of such owner or possessor as would be sufficient to discharge such demand, with reasonable cost, to any person who would pay such demand, for the shortest term; and to make and execute a lease to such purchaser for such term, which lease should be good and effectual in law, and "vest the possession thereof in the purchaser, and bar the owner and all others during the term." The law of 1788 and the supplement of 1806 are still a part of the statute laws of this state. Comp. Stat., pp. 3241, 3249.

The proofs in the present case show that the original work

of reclaiming the lands in controversy was done by a corporation organized pursuant to the provisions of the original act, and known as the Supawana Meadow Company, under the supervision of a manager appointed by it; and that work of repairing the embankments and dikes after their partial destruction in 1877 was done by the same company under like supervision; that the corporation assessed the costs and expenses of such reparation upon the owners and possessors of the lands, and demanded of each of them the payment of so much thereof as had been assessed upon his holding; that this demand was not complied with by any of such owners or holders, and that the manager of the company thereupon, under the authority of and in compliance with the provisions of the supplement of 1806, leased this property for a term of ninety-nine years to one Joseph H. Ward, who was the highest bidder therefor at the public vendue held for the purpose by the manager; and that Perrine, the plaintiff, holds this lease by due assignment from the heirs of Ward, who died the possessor thereof. The effect of this lease was to vest the possession of the lands in controversy in Ward and his assignees, and to bar the owners of the lands, *and all others,* during the term. Such is the language of the statute. And, so, if it be conceded that the title to this land is in the state, and that the original reclaimers thereof were mere licensees of the state, the present plaintiff holds this land as a lessee of the state itself, under an instrument executed by an agent of the state duly empowered to execute it, and which, the legislature has declared, entitles him to the exclusive possession thereof. That being so, neither the state, nor any person claiming under the right of the state, is entitled to disturb him in that possession, so long as the provisions of the lease are observed by him. And, as there is no suggestion that there has been any act, either of the plaintiff or of his predecessors, which would operate to forfeit his leasehold estate, he was, under the facts submitted at the trial, entitled to a verdict against the defendant.

The judgment under review will be affirmed.

*For affirmance*—The Chancellor, Chief Justice, Garrison, Swayze, Trenchard, Parker, Bergen, Minturn, Kalisch, Black, Bogert, Vredenburgh, White, Terhune, Heppenheimer, Williams, JJ.    16.

*For reversal*—None.